**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**GENERAC POWER SYSTEMS, INC.,**

        **Plaintiff,**

  v.                                                          **Case No. 12-C-66**

**KOHLER CO.,**

        **Defendant.**

---

## DECISION AND ORDER

---

The Plaintiff, Generac Power Systems, Inc. ("Generac"), and the Defendant, Kohler Co. ("Kohler"), are competitors in the home-generator business and both make 20 kilowatt ("kW") generators. Generac has a patent infringement lawsuit against Kohler pending before this Court relating to Generac's method patent, U.S. Patent No. 7,230,345, for exercising a standby electrical generator. *See Generac Power Systems v. Kohler Co.*, Case. No. 10-C-947 (E.D. Wis.) That action is currently stayed.

In January 2012, Kohler began distributing a marketing handbook and a compact disc ("CD") to distributors and dealers. Generac believes statements made in that handbook are false. Generac alleges Kohler's statements in those marketing materials that compare Kohler's 20 kW generator to Generac's are false and misleading advertising in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)[1] (Count I); and section 100.18, Wis. Stats., the Wisconsin false advertising statute (Count II); and constitute unfair competition and false advertising under Wisconsin common law (Count III).

Pursuant to Rule 65 of the Federal Rules of Civil Procedure Generac seeks a preliminary injunction under § 1125(a) enjoining Kohler from disseminating the marketing materials and requiring Kohler to recall those materials that it has already injected into the stream of commerce. (*See* Pl.'s Reply Mot. Prelim. Inj. 7.) (ECF No. 16.) Having considered the evidentiary materials filed by the parties and their arguments, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a)(2) of the Federal Rules of Civil Procedure.

## Findings of Fact

Residential standby generators provide emergency power to homes in the event of an electrical outage. Generac and Kohler are competitors in the market for residential standby generators. Residential standby generators are fairly expensive products that

---

[1] 11 U.S.C. § 1125 (a)(1)(B) provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

2

homeowners do not purchase on a whim. The regular retail price of Kohler's 20 kW generator is $4,949.00. Customers generally shop around and conduct research before purchasing a standby generator for their home.

Prior to January 2011, Kohler used distributors who had their own dealer networks. In January 2011, Kohler began selling its generators directly through a network of Kohler dealers. The marketing handbook at issue in this lawsuit is intended to educate a new network of Kohler dealers. The marketing handbook is an educational tool for professional dealers and provides a way for Kohler to introduce its new dealer network to the standby generator category and offer promotional support for the products.

Melanie Tydrich ("Tydrich"), Senior Channel Manager – Residential/Portable Products for Kohler, is responsible for marketing activities related to Kohler's residential products, including residential standby generators. At the direction and under the supervision of Kohler senior management, she oversaw the creation and distribution of the marketing handbook in question.

In January 2012, in accordance with the direction of Kohler senior management, Tydrich caused the marketing handbook to be mailed to 1,237 Kohler dealers. (*See* Tydrich Aff. Ex. A.) Each dealer received one copy of the marketing handbook. Additionally, 60 copies were sent to two distributors for further distribution to their dealers

The handbook is directed to dealers and not individual consumers. Page five of the handbook contains a chart entitled "Competitive Comparison" that purports to compare

Kohler's 20kW generator (the "Kohler Generator") to Generac's 20kW generator (the "Generac Generator"). The chart includes a number of key features including "Commercial-Grade Engine," "Corrosion-Proof Enclosure," and "Low-Speed Diagnostic Exercise." Next to each of these factors, in the column headed, "Kohler 20kW Generator," a check mark appears indicating that the Kohler Generator includes each of these features. No such checkmark appears in the column headed "Generac 20kW Generator."

The marketing handbook also includes several types of promotional material that the professional dealers can reproduce and use to reach customers. The material included reproducible radio spots, print ads for different market segments, sales presentations, and consumer direct mail pieces. The comparison chart on page five of the Marketing Handbook does not appear in the sample promotional material that Kohler encouraged the professional dealers to use with customers.

Contrary to Kohler's representation on the chart on page five of its handbook, when the Generac Generator is in low speed exercise mode, it runs certain diagnostic tests to make certain that the generator system is operating properly. (Iles Decl. ¶ 3.) While the Generac Generator constantly runs diagnostic tests regardless of whether it is in the low exercise mode or the regular mode, it also performs diagnostic testing that is unique to the lower speed of its exercise mode. (*Id.* at ¶¶ 3-4.)

There is no industry grade on what constitutes a commercial grade engine.

**Applicable Law**

With respect to Generac's motion, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify a preliminary injunction, Generac must show that it is likely to succeed on the merits of its claims, that it is likely to suffer irreparable harm without an injunction, that the harm that it would suffer without an injunction is greater than the harm that preliminary relief would inflict upon Kohler and that the injunction is in the public interest. *See Michigan v. U.S. Army Corp of Engrs.*, 667 F.3d 765, 769 (7th Cir. 2011) *cert denied*, ___ U.S. ___ , 2012 WL 603147, 80 BNA USLW 3283 (U.S. Feb. 27, 2012) (No. 11-541). "The likelihood of success on the merits is an early measurement of the quality of the underlying lawsuit, while the likelihood of irreparable harm takes into account how urgent the need for equitable relief really is." *Id.* at 788. These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted. *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). In considering irreparable harm, the question is whether the party seeking relief will suffer irreparable harm in the interim period prior to the resolution of its claims. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

In order to establish a claim of false or misleading advertising under § 43(a), Generac must prove: (1) a false statement of fact by the defendant in a commercial

5

advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999).

The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. *Hot Wax, Inc. v. Turtle Wax, Inc*., 191 F.3d 813, 820 (7th Cir. 1999). To show literal falsity, a plaintiff must either show that the defendant's test does not prove the proposition or offer affirmative proof that the advertisement is false. *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1091 (7th Cir. 1994) ("If the challenged advertisement makes implicit or explicit references to tests, the plaintiff may satisfy its burden by showing that those tests do not prove the proposition; otherwise, the plaintiff must offer affirmative proof that the advertisement is false.").

When the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so. *Id.* In contrast, when

6

the statement is literally true or ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion. *Id.*

Kohler raises the question of whether the alleged false representations meet the "commercial advertisement" requirement. The Court of Appeals for this Circuit defines advertising as "a form of promotion to anonymous recipients, as distinguished from face-to-face communication." *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). It has also indicated that "[i]n normal usage, an advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not, because they are not "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion.'" *Id*. at 803-04. *See also*, *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005) (person-to-person communications at trade shows were not "commercial advertising or promotion.") *First Health*, also "questioned the reasonableness" of the line of district court decisions that follow a multi-factor approach for determining the scope of § 43(a). 269 F.3d at 803 (citing *Gordon & Breach of Sci. Pub. S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521 (S.D.N.Y. 1994)).

In asserting that the marketing handbook falls within the scope of the Lanham Act, Generac relies upon dicta in *American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.,* 820 F.Supp. 1072, 1077 (N.D. Ill. 1993). The non-binding district court decision predates *First Health.* The excerpt Generac quotes, also omits the italicized material, inserted by the Court. In whole, the excerpt states "the allegation that the advertising language

7

was false or misleading *is sufficient to withstand a motion to dismiss*, regardless of to whom the advertising was targeted." *Am. Needle*, 820 F.Supp. at 1077 (citing *Mylan Labs., Inc. v. Pharm. Basics, Inc*., 808 F.Supp. 446, 459 (D. Md. 1992) (denying motion to dismiss § 43(a) claim where defendant circulated brochures to wholesalers, physicians, and pharmacists who were not the consumers of the defendant's products). The additional cases cited by Generac are district court decisions within this circuit that precede *First Health* or are from outside this circuit and do not embrace or discuss *First Health.* (*See* Pl.'s Reply Mem. Prelim. Inj. 10 (citing *Oreck Direct, LLC v. Dyson, Inc.*, 544 F. Supp. 2d 502, 512-13 (E.D. La. 2008); *Republic Tobacco, L.P. v. N. Atl. Trading Co.*, No. 98 C 4011, 1999 WL 261712, at *7 (N.D. Ill. Apr. 9, 1999); *Williams Elecs., Inc. v. Bally Mfg. Corp.*, 568 F. Supp. 1274, 1283 n.24 (N.D. Ill. 1983); *Matsushita Elec. Corp. of Am. v. Solar Sound Sys., Inc.*, 381 F. Supp. 64, 69 (S.D.N.Y. 1974); *N.S. Meyer, Inc. v. Ira Green, Inc.*, 326 F.Supp. 338, 343-44 (S.D.N.Y. 1971)).

The parties do not cite and this Court's research has not disclosed a similar situation addressed under controlling Seventh Circuit law. The recipients of Kohler's marketing handbook were not anonymous, rather they are identifiable entities or persons who distribute generators. The recipients number just under 1,300.

Generac states that the distributors are unlikely to be single employee businesses and that the handbook will be read by others. However, at this time, Generac's statement is a generalization that lacks factual support.

While materials were also provided on a CD, the targets are the distributors. Moreover, the fourteen pages of the handbook advise regarding media planning and of the availability of a variety of advertising resources in an array of formats that Kohler will provide to distributors. The chart that contains the two statements challenged by Generac's preliminary injunction motion do not appear in any of that promotional material. The case law in this judicial circuit regarding distinction between those materials that are commercial advertising and those that are not, in the wake of *First Health,* is not well-developed. Generac has not established that the marketing handbook is a commercial advertisement within the ambit of section 43(a) of the Lanham Act. Thus, the likelihood of Generac prevailing on the merits of its Lanham Act claim is extremely scant.

Despite concluding that § 43(a) of the Lanham Act does not apply to the marketing handbook, the Court will briefly discuss the alleged false claims. Generac has established that Kohler's statement that the Generac Generator lacks a "Low-Speed Diagnostic Exercise," is literally false. Generac Generators have a low speed diagnostic exercise and Kohler's reliance on claimed qualitative differences between its diagnostic exercises does not impact on the falsity of that statement.

However, Generac has not established the literal falsity of the statement that it lacks a commercial engine. Generac's own advertisements claim that it has a specially designed engine for its residential generators. Indeed, different engines are included in Generac's advertisements for its commercial generators. The fact that the engines for Generac

9

and Kohler's residential generators may both be interchangeably used in a lawn mower does not make Generac's residential generator engine a commercial engine. The absence of any standard industry definition of a commercial engine would make it more difficult for Generac to prove the literally falsity of that information. Further proceedings would be necessary to determine whether the statement implicitly conveys a false impression, is misleading in context, or likely to deceive consumers. However, under the circumstances, they are not warranted.

The weakness of Generac's Lanham Act claim would require a far greater showing of the likelihood of irreparable harm. Generac has not made a sufficient showing that it has an urgent need for equitable relief. Therefore, Generac's motion for a preliminary injunction is denied.

**Other Matters**

Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). This obligation is reinforced by the Federal Rules of Civil Procedure: 'If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Id*. (quoting Fed. R. Civ. P. 12(h)(3)).

At this juncture, in essence, the Court has determined that Generac does not have a § 43(a) claim under the Lanham Act. While Generac also cites § 38 of Lanham Act, 15 U.S.C. § 1120 (Compl. ¶ 1), no claim is alleged under that provision. Generac invokes

supplemental jurisdiction over its state law claims against Kohler. Each party is alleged to be a corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin. It follows that both corporations are citizens of Wisconsin. Hence, diversity jurisdiction under 28 U.S.C. § 1332 is not available to Generac.

Thus, the critical question is whether this Court has federal question jurisdiction over this action. If there is no federal question jurisdiction over this action, the entire action must be dismissed. As the party invoking federal court jurisdiction, Generac has the burden of establishing proper federal subject matter jurisdiction. *Muscarello v. Ogle Cnty. Bd. of Com'rs*, 610 F.3d 416, 425 (7th Cir. 2010), *cert. denied*, __ U.S. __, 131 S.Ct. 1045 (2011). Therefore, the Court will set a deadline by which Generac must show cause why this action should not be dismissed for lack of subject matter jurisdiction. If Generac does not file any papers by the stated deadline, the Clerk of Court will enter judgment dismissing this action for lack of subject matter jurisdiction.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Generac's motion for a preliminary injunction (ECF No. 3) is **DENIED**;

No later than May 20, 2012, Generac **MUST** file papers showing cause why this action should not be **DISMISSED** for lack of subject matter jurisdiction; and

If Generac does not file any papers by the stated deadline, the Clerk of Court is **DIRECTED** to enter judgment dismissing this action for lack of subject matter jurisdiction.

Dated at Milwaukee, Wisconsin, this 14th day of April, 2012.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**